**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:20-CV-00441-CHB-RSE**

SHAWN P.                                                                    PLAINTIFF

VS.

KILOLO KIJAKAZI,
*Acting Commissioner of Social Security*[1]                              DEFENDANT

## REPORT AND RECOMMENDATION

The Commissioner of Social Security denied Shawn P.'s ("Plaintiff's") application for disability insurance benefits. Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). (DN 1). Both Plaintiff (DN 18) and the Commissioner (DN 23) have filed a Fact and Law Summary. The District Judge referred this case to the undersigned United States Magistrate Judge to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law, and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B). (DN 17).

### I. Findings of Fact

Plaintiff is 45 years old, lives with his wife, two children, and father, and has a high school education. (Tr. 154, 33, 34). Plaintiff is presently unemployed but has past relevant work experience as a custodian for the University of Louisville from August 14, 2006 to April 12, 2017. (Tr. 34). On August 28, 2017, Plaintiff protectively filed an application for disability insurance benefits ("DIB") from the Social Security Administration under Title II of the Social Security Act, 42 U.S.C. § 1382c(a)(3)("Act"), alleging disability beginning on April 13, 2017. (Tr. 154).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi is substituted for Andrew Saul as Defendant in this case.

Plaintiff claimed he could not perform work at substantial gainful levels due to nerve damage, ACL surgery, meniscus surgery, and neuroma. (Tr. 182). His application was denied initially on October 18, 2017 (Tr. 109) and upon reconsideration on December 6, 2017 (Tr. 85). Upon Plaintiff's request, a hearing was conducted in Nashville, Tennessee before Administrative Law Judge Michelle Alexander ("ALJ Alexander") on April 2, 2019. (Tr. 27–54). ALJ Alexander issued an unfavorable decision on May 22, 2019. (Tr. 9–20).

ALJ Alexander applied the traditional five-step sequential analysis promulgated by the Commissioner for evaluating a disability claim, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir. 2010), and found as follows. First, Plaintiff has not engaged in substantial gainful activity since April 13, 2017, the alleged onset date. (Tr. 14). Second, Plaintiff has the severe impairments of right third webspace interdigital neuroma of the right foot, status post right knee surgery, neuropathy of the right foot, and degenerative disc disease of the lumbar spine with fusion. (Tr. 15). Third, none of Plaintiff's impairments or combination of impairments meets or medically equals the severity of a listed impairment under 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (*Id.*). ALJ Alexander then determined Plaintiff has the residual functional capacity ("RFC") to perform "sedentary work" as defined in 20 C.F.R. 404.1567(a) with the following limitations:

> He can occasionally push and pull with the right lower extremity and can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolds; he can occasionally balance, stoop, kneel, and crouch, but should never crawl; he must alternate between sitting and standing once every thirty minutes for five minutes at a time without increasing time off task; he must avoid concentrated exposure to extreme cold and vibration, should not work with or near dangerous and moving types of equipment or machinery, moving mechanical parts, or unprotected heights, and he can only occasionally operate a motor vehicle.

(Tr. 15). Fourth, ALJ Alexander found Plaintiff unable to perform his past relevant work as actually or generally performed. (Tr. 18). Fifth and finally, considering Plaintiff's age, education,

work experience, and RFC, ALJ Alexander determined there are jobs that exist in significant numbers in the national economy that he can perform. (Tr. 18).

Based on this evaluation, ALJ Alexander concluded that Plaintiff was not disabled, as defined in the Social Security Act, from April 13, 2017 through the date of her decision. (Tr. 19). Plaintiff sought review of ALJ Alexander's decision. (Tr. 151–53). The Appeals Council declined review on May 6, 2020. (Tr. 1). At that point, the denial became the final decision of the Commissioner, and Plaintiff sought judicial review from this Court. (DN 1).

## II. Standard of Review

When reviewing the administrative law judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). Instead, the Court's review of the administrative law judge's decision is limited to an inquiry as to whether the administrative law judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (internal citations omitted), and whether the administrative law judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

## III. Conclusions of Law

3

Plaintiff raises several issues with ALJ Alexander's decision. First, Plaintiff criticizes ALJ Alexander's findings at step three as ambiguous and inaccurate. (DN 18, at PageID # 1837). Second, Plaintiff argues the record as a whole does not support the conclusion that he can perform sustained sedentary work. (*Id.* at PageID # 1840). Next, Plaintiff contends ALJ Alexander failed to reconcile contradictory evidence in determining at step five that there were jobs in significant numbers in the national economy that Plaintiff could perform. (*Id.* at PageID # 1843). Relying on these objections, Plaintiff submits ALJ Alexander's decision was not supported by substantial evidence. (*Id.*).

The Commissioner positions that ALJ Alexander properly concluded Plaintiff did not meet the criteria for a listing impairment and could perform sedentary work after considering the entire record. (DN 23, at PageID # 1860). Moreover, the Commissioner argues ALJ Alexander's RFC finding was supported by substantial evidence, including Plaintiff's "testimony about the limiting effects of his impairments, the objective medical evidence, which showed mild tenderness but a normal motor and sensory examination, and the prior administrative medical findings of state agency physician Dr. Kavka[,] who concluded that Plaintiff could perform a limited range of sedentary work." (*Id.* at PageID # 1875). Lastly, the Commissioner contends ALJ Alexander's step five determination was well-founded, noting that Plaintiff has not identified any medical opinions that contradict her findings. (*Id.* at 1883).

## A. Finding at Step Three – Listed Impairments

Plaintiff contends he provided sufficient evidence to show he had "a substantial chance of meeting or equaling" Listing 1.02, 1.03, 1.04, and/or 1.08. (DN 18, at PageID # 1837). He suggests ALJ Alexander failed to consider the severity of his ambulation issues and the medical evidence demonstrating them. (*Id.*). The Commissioner notes Plaintiff did not argue his impairments met or

4

medically equaled a listing in the pre-hearing brief he submitted to ALJ Alexander nor raise the issue during the hearing. (DN 23, at PageID # 1865). Even so, according to the Commissioner, ALJ Alexander considered all applicable listings and concluded Plaintiff's impairments did not meet or medically equal any. (*Id.*).

A claimant must meet a substantial burden to demonstrate a listed impairment at step three. Listed impairments are considered by the Social Security Administration to be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." *Reynolds v. Comm's of Soc. Sec.*, 424 Fed. Appx. 411, 414 (6th Cir. 2011). To be considered disabled at step three, "a claimant must establish that his condition either is permanent, is expected to result in death, or is expected to last at least 12 months, as well as show that his condition meets or equals one of the listed impairments." *Evans v. Secretary of Health & Human Services*, 820 F.2d 161, 164 (6th Cir.1987). "An impairment satisfies the listing only when it manifests the specific findings described in the medical criteria for that particular impairment." *Bluer v. Comm'r of Soc. Sec.*, No. 1:13-CV-22, 2014 WL 700424, at *4 (W.D. Mich. Feb. 24, 2014) (citing 20 C.F.R. §§ 404.1525(d); 416.925(d)). Because a claimant who meets the requirements of a listed impairment at step three will be deemed conclusively disabled and entitled to benefits, the burden on the claimant is high. *Robinson v. Comm'r of Soc. Sec.*, 426 F. Supp. 3d 411, 421 (E.D. Mich. 2019).

ALJ Alexander determined that the record evidence did not document listing-level severity "because no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment, individually or in combination." (Tr. 15).

To demonstrate a listed impairment of the musculoskeletal system under Listing 1.02, a claimant must provide evidence of a major dysfunction of a joint or joints, due to any cause,

"characterized by gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." 20 C.F.R. Pt. 404. Subpt. P. App. 1, § 1.02. Additionally, the claimant must show:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;[2]
>
> or
>
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

Under Listing 1.03, a claimant must have undergone "[r]econstructive surgery or surgical arthrodesis of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b." *Id.* at § 1.03. Return to effective ambulation must not have occurred, or be expected to occur, within 12 months of onset. *Id.* To demonstrate a disorder of the spine or spinal cord under Listing 1.04, a claimant must provide:

> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);
>
> or
>
> B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

---

[2] "Inability to ambulate effectively means an extreme limitation of the ability to walk." *Id.* at § 1.00(B)(2)(b)(1). In general, ineffective ambulation prevents "independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* Examples of ineffective ambulation include: "the inability to walk without the use of a walker, two crutches or two canes, . . . the inability to use standard public transportation, [or] the inability to carry out routine ambulatory activities[.]" *Id.* at § 1.00(B)(2)(b)(2).

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Plaintiff claims the record evidence shows findings that equal one or all of these listing. (DN 18, at PageID # 1840). The Commissioner reasons that Plaintiff fails to meet Listings 1.01, 1.03, or 1.04 because he has not demonstrated an inability to ambulate effectively. (DN 23, at PageID # 1869).

A claimant does not satisfy a particular listing unless all the requirements of the listing are present. *See Hale v. Secretary of Health & Human Services*, 816 F.2d 1078, 1083 (6th Cir.1987). As the Commissioner points out, a common factor of Listings 1.02, 1.03, and 1.04 is an inability to ambulate effectively. Consequently, failure to demonstrate an inability to ambulate will eliminate the possibility that Plaintiff could meet those listings. The Commissioner positions that because Plaintiff has not alleged that he needs an assistive device to walk, he can necessarily ambulate effectively. (DN 23, at PageID # 1869). The regulations instruct that "[t]he ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation," but rather, "[t]he individual's ability to ambulate with and without the device provides information as to whether, or the extent to which, the individual is able to ambulate without assistance." 20 C.F.R. Pt. 404. Subpt. P. App. 1, § 1.00(J)(4).

While Plaintiff does not use an assistive device to walk (Tr. 17), he has alleged an inability to drive long distances or grocery shop due to debilitating pain. (Tr. 47). At the same time, Plaintiff testified at the hearing that he drives 4-5 times per week to take care of errands, including going to the post office and the grocery when his wife is unable to, and that he drives his son to and from

sports activities. (*Id.*). In addition, a physical therapy evaluation in June of 2017 noted Plaintiff was able to walk up to 250 feet. (Tr. 324). Although the regulations do not provide a specific distance, they direct that to ambulate effectively, "individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." 20 C.F.R. Pt. 404. Subpt. P. App. 1, § 1.00(B)(2)(b)(2).

While Plaintiff may have difficulty ambulating, the record evidence does not demonstrate complete inability to ambulate effectively as required by the regulations. *See Bunch v. Berryhill*, No. 1:17-CV-00195-LLK, 2018 WL 5283451, *2 (W.D. Ky. Oct. 24, 2018) ("Contrary to Plaintiff's suggestion, [§ 1.00B2b] requires more than simply 'difficulties with ambulation.' 1.00B2b defines 'inability to ambulate effectively' as 'having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.'"). Because Plaintiff failed to demonstrate this factor, ALJ Alexander did not err in concluding that he does not meet Listings 1.02, 1.03, or 1.04.

Lastly, under Listing 1.08, a claimant must have "a soft tissue injury (e.g., burns) of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M,[3] directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset." *Id.* at § 1.08. Because Plaintiff has not demonstrated, or even alleged, that he suffered a soft tissue injury, this listing is not applicable.

Plaintiff has failed to demonstrate that he meets all the requirements for Listings 1.02, 1.03, 1.04, or 1.08. ALJ Alexander properly determined that none of Plaintiff's impairments, alone or

---

[3] "Under continuing surgical management" refers to "surgical procedures and any other associated treatments related to the efforts directed toward the salvage or restoration of functional use of the affected part." *Id.* at § 1.00(M).

in combination, reached listing level. Plaintiff failed to meet the substantial burden of demonstrating a listed impairment at step three, and ALJ Alexander did not err in continuing through the sequential analysis.

### B.  Residual Functional Capacity Finding

Plaintiff claims ALJ Alexander's RFC finding was not based on objective evidence. (DN 18, at PageID # 1840). Plaintiff criticizes ALJ Alexander's reliance on state agency consultants' findings, which he suggests "had no support in either the law or facts." (*Id.* at PageID # 1843). The Commissioner counters that ALJ Alexander properly accounted for limitations that were consistent with the record evidence. (DN 23, at PageID # 1882). Moreover, the Commissioner points out that ALJ Alexander's RFC finding was more restrictive than the state agency consultants' assessments and took Plaintiff's subjective complaints into consideration. (*Id.* at PageID # 1881).

The residual functional capacity finding is the administrative law judge's ultimate determination of what a claimant can still do despite her physical and mental limitations. 20 C.F.R. §§ 416.945(a), 416.946. The administrative law judge bases her residual functional capacity finding on a review of the record as a whole, including a claimant's credible testimony and the opinions from a claimant's medical sources. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In addition to considering medical records and physician opinions in forming their RFC, ALJs must assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled. *See* 20 C.F.R. § 404.1529(a); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir. 1997); *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). There must be medical signs and laboratory findings which show the existence of a medical impairment that could reasonably be expected to produce the pain alleged. *Walters*, 127

F.3d at 530; *Duncan*, 801 F.2d at 854. In evaluating the claimant's subjective complaints, the ALJ considers objective medical evidence, as well as other non-exhaustive factors such as evidence of daily activities, the frequency and intensity of pain, medication taken and any resulting side effects, and any other measures taken to alleviate the pain. *See* 20 C.F.R. §§ 404.1529(c)(2), (3), 416.929(c)(2), (c)(3).

In determining Plaintiff's RFC, ALJ Alexander found that his subjective complaints were inconsistent with the objective medical evidence of record. (Tr. 17). Thus, ALJ Alexander found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the intensity, persistence, and limiting effects alleged by Plaintiff were not entirely consistent with the record evidence. (Tr. 16). Plaintiff suggests ALJ Alexander "considered only a limited number of objective findings and not the record as a whole," pointing to her alleged failure to discuss Plaintiff's physical therapy results, multiple surgeries, and other evidence consistent with Plaintiff's hearing testimony. (DN 18, at PageID # 1841).

It is not necessary for the ALJ to discuss all relevant medical evidence for each of her findings as long as it is clear she considered the evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("An ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *Coppage v. Berryhill*, No. 1:16-CV-00144, 2017 WL 8640926 at *4 (W.D. Ky Aug. 11, 2017) ("The ALJ's decision does not discuss every single piece of medical evidence, but she is not required to do so."). That said, ALJ Alexander clearly considered Plaintiff's brief participation in physical therapy before having to stop due to worsening pain. She noted, "[Plaintiff] is waiting on physical therapy, has been receiving injections for pain, and is going to do a sacroiliac joint fusion later in 2019." (Tr. 16). ALJ Alexander also mentioned "because of the existing foot and knee issues with

the right lower extremity, it was suggested that knee surgery be performed first so proper rehabilitation could be done after any subsequent lumbar surgery." (Tr. 17).

ALJ Alexander also thoroughly discussed Plaintiff's knee surgeries in 2015 and 2017 and their results, including his follow-up appointment in October of 2017, which revealed "normal hip and ankle motion, mild tenderness to palpation along the medial and latera joint lines of the knee, a stable knee, mild warmth and effusion, normal motor and sensory examination, and near full motion." (Tr. 16). In assessing Plaintiff's complaints of physical impairments and pain, ALJ Alexander considered that in October of 2018, Plaintiff "presented with an irregular and antalgic gait, but did not use an assistive device to walk and had grossly normal strength, range of motion, and sensory examination" and that "he received an initial sacroiliac joint injection for pain," followed by a second injection in February of 2019. (*Id.*).

In addition, ALJ Alexander accepted the opinions of state agency consultants Dr. Shay Hanson-Gould and Dr. Stephen Kavka because they were "grossly consistent with and supported by [] objective evidence . . ., including the imaging studies and treatment for [Plaintiff's] knee and back pain." (Tr. 18). ALJ Alexander therefore deemed their opinions "very persuasive." (*Id.*). Plaintiff seems to take issue with the consultants' findings mainly because additional evidence was introduced into the record after their opinions were issued. But as the Commissioner notes, ALJ Alexander clearly considered the later-submitted evidence and incorporated additional limitations "to ensure adequate weight [was] given to [Plaintiff's] subjective allegations." (*Id.*). "[A]n ALJ may rely on the opinion of a consulting or examining physician who did not have the opportunity to review later-submitted medical records if there is 'some indication that the ALJ at least considered these facts.'" *Durard v. Comm'r of Soc. Sec.*, No. 5:20-CV-00102-LLK, 2021 WL 467208, *2 (W.D. Ky. Feb. 9, 2021) (quoting *Spicer v. Comm'r of Soc. Sec.*, 651 F. App'x 491,

493-94 (6th Cir. 2008)).

Contrary to Plaintiff's assertions, ALJ Alexander considered his subjective complaints and the evidence he suggests supports them, but reasonably determined that the record as a whole contradicted his reports of their intensity and limiting effects. Plaintiff reasons "[a]ll the evidence considered by the ALJ was consistent with [his] testimony," but even if this were true, his independent assessment of the record and belief that a contrary finding should have been reached does not demonstrate that ALJ Alexander's decision was contrary to the weight of the evidence. It is well settled that an administrative law judge's decision may be supported by substantial evidence "even if that evidence could support a decision the other way." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). While evidence may exist that would support a different finding, ALJ Alexander's determination was supported by substantial evidence in the record and the undersigned finds no error.

## C. Finding at Step Five – Jobs in the National Economy

As to ALJ Alexander's finding at step five, Plaintiff asserts that the hypothetical questions posed to the vocational expert during the hearing did not accurately portray his limitations. (DN 18, at PageID # 1843). Specifically, he argues ALJ Alexander failed to resolve evidence that contradicted her findings that Plaintiff could occasionally push or pull using the right lower extremity and would have to alternate from a sitting and standing position every thirty minutes. (*Id.*). In response, the Commissioner suggests ALJ Alexander accepted Plaintiff's own hearing testimony that he "could probably stand up for 35-40 minutes [before having] to sit down" (Tr. 41) and accounted for this limitation in her decision. (DN 23, at PageID # 1882).

During the first four steps of the sequential analysis, the claimant has the burden of proof, but at step five the burden shifts to the Commissioner. *See Young v. Secretary of Health and*

*Human Servs.*, 925 F.2d 146, 148 (6th Cir.1990) (citing *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir.1980)); *Cole v. Secretary of Health and Human Servs.*, 820 F.2d 768, 771 (6th Cir.1987). At step five, the Commissioner must "identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).

At the hearing, ALJ Alexander posed three hypotheticals to impartial vocational expert Dr. Silvio Reyes. First, she inquired into whether a hypothetical individual of Plaintiff's age, education, and work experience with various restrictions could perform Plaintiff's past relevant work. (Tr. 50). Dr. Reyes testified that all past relevant work would be eliminated. (*Id.*). When asked whether any sedentary-level jobs existed in the national economy that could be performed by such an individual, Dr. Reyes testified that there were. (*Id.*). Next, ALJ Alexander posed a hypothetical with all the same limitations as the first, except the individual "must alternate between sitting and standing once every 30 minutes for five minutes without increasing time off task." (*Id.*). In that case, Dr. Reyes testified that the same sedentary jobs enumerated in response to hypothetical one could be performed. (Tr. 51). Third, ALJ Alexander amended the hypothetical to account for an inability to push and pull with the right lower extremity and no motor vehicle use. (*Id.*). Again, Dr. Reyes' answer did not change, and he testified that the third hypothetical individual could perform the same sedentary work outlined in response to hypothetical one. (*Id.*).

After reviewing the record evidence, the undersigned finds no error with the hypotheticals posed to Dr. Reyes. These hypotheticals are supported by evidence in the record, including Plaintiff's own testimony that he can stand for 35-40 minutes before needing to sit, and that "if he sits too long everything will stiffen up." (Tr. 16). Additionally, Plaintiff takes issue with ALJ

13

Alexander's hypothetical that allowed for occasional pushing and pulling through use of the lower right extremity, but her third hypothetical specifically accounted for a total inability to move in such ways. (*See* Tr. 51) ("I am removing from Hypotheticals 1 or 2 the occasional operation of a motor vehicle, so that's out of this hypothetical and no pushing and pulling with the right lower extremity."). This hypothetical change simply did not affect Dr. Reyes' findings.

"It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Hum. Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993). Although Plaintiff disputes the applicability of the limitations posed to the vocational expert, he suggests no alternatives that he believes should have been presented instead. Consistent with the Dictionary of Occupational Titles (DOT), Dr. Reyes' testimony was credited by ALJ Alexander. As previously stated, it is not the job of a reviewing court to decide questions of credibility. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted). The Court finds no error with ALJ Alexander's examination of the impartial vocational expert at the hearing or her overall evaluation of Plaintiff's claim at step five.

RECOMMENDATION

For the above-stated reasons, the Court finds that the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **AFFIRMED.**

Regina S. Edwards, Magistrate Judge

United States District Court

July 13, 2022

<u>NOTICE</u>

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and (C) and Fed. R. Civ. P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties.  Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:        Counsel of Record